**STATE of Missouri, Plaintiff-Respondent,**

v.

**Elenor Joyce GAY, Defendant-Appellant.**

**No. WD31720.**

Missouri Court of Appeals, Western District.

Sept. 29, 1981.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before KENNEDY, P.J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant appeals from her conviction of murder in the second degree and the sentence of 35 years imprisonment. The issue here concerns her asserted defense of justifiable homicide. We affirm.

The basic facts are not in dispute. In January 1978 defendant sent her two small children from Chicago to live with her father Zane Whittaker and his wife (defendant's step-mother) Dola, in their home in Kansas City. When the children arrived, Zane enrolled them in the Kansas City school system. Thereafter defendant herself came to Kansas City in August 1978. Her reason was that she felt unsafe in the United States and wanted to pick up the children in order to go to Cuba via Mexico. However, she did not have sufficient funds at the time of her arrival in Kansas City and needed some time to accumulate funds.

In November, defendant decided to leave for Cuba. She so informed Dola, who then asked if defendant needed money and offered to give her some. Defendant refused that offer but did accept an offer from Dola to drive defendant and the children to the bus station.

Later that evening defendant brought down her bags and asked Zane to carry the bags to the car. He refused to do so, but Dola offered to help with the bags and did take them out.

About that time Zane received a phone call and he spent some time on the phone extension in the kitchen. Thereafter all three sat down in the front room, and a conversation ensued between defendant and Zane. Defendant asked him why he had refused to carry out the bags. Zane responded that he was not in favor of her leaving with the children and dragging them out of a favorable environment in his home where they were doing well. This led to a general argument between the two of them which defendant described in her testimony as "intense" but quiet.

Zane then got up for the purpose, according to Dola, of going to the closet to hang up his sweater. At that time defendant also got to her feet, pulled out a semi-automatic hand gun, and shot Zane seven times. According to defendant, Zane only moved toward the closet when he backed into it after being shot. She admits that she fired the fatal shots.

At the close of the evidence, defendant offered instructions which would have submitted to the jury the issue of justifiable homicide. The trial court refused the proffered instructions, and that refusal constitutes the sole complaint on this appeal.

The defense of justifiable homicide is governed by Section 559.040, RSMo 1969, which was in effect on the date of this homicide. That section provides:

"Homicide shall be deemed justifiable when committed by any person in either of the following cases:

(1) In resisting any attempt to * * * commit any felony upon him or her, * *; or

(2) When committed in the lawful defense of such person, or of his or her * * child, * * * when there shall be reasonable cause to apprehend a design to commit a felony, * * * and there shall be reasonable cause to apprehend immediate danger of such design being accomplished * * *."

Defendant argues that the evidence here does show reasonable cause on her part to apprehend a design on the part of Zane to commit the felony of kidnapping her and her children and reasonable cause to apprehend immediate danger of Zane accomplishing that design.

In support of that contention, defendant points to the following testimony: (1) Defendant testified that in 1976 while visiting her father and step-mother, she got into an argument with her sister and that Zane intervened and pinioned her arms behind her. (2) Defendant testified and Dola confirmed that in August or September 1978, Zane had called the mental health authorities and had asked them to come out to talk with defendant. (3) Zane had argued with defendant on a number of occasions about her political beliefs, her mental condition, and what was for the best interests of the children. (4) Defendant testified that about a week before the homicide, Zane had threatened to tie her down in bed and beat her and he had tried to run over her with a vacuum cleaner. (5) Defendant described Zane's actions in connection with his telephone conversations just before the homicide as "conspiratorial." (6) She testified that at the time of the shooting she was fearful that Zane "would call the police or mental health authorities to come and have me confined solely because he did not want me to take my children out of the house, and because it would be a good way to get rid of me and my political beliefs."

Even if everything to which defendant testified be accepted as true, all of that put together does not add up to a reasonable fear that kidnapping was being threatened. The essence of kidnapping is the involuntary restraint of liberty with the intent to confine the victim. State v. Johnson, 549 S.W.2d 627 (Mo.App.1977). Yet from the evidence, there is no indication that Zane undertook any act which could be deemed a substantial step toward the commission of that felony. There is no evidence that the deceased, by action or threatened action, attempted to seize or prevent defendant or

her children from leaving. When asked on cross-examination what it was that Zane said that caused her to believe she was not free to leave, defendant stated that she could not remember. It may be that defendant had some paranoid fear arising out of her peculiar mental condition which may have caused her to fear that a kidnapping was imminent.[1] However, such an irrational fear does not give rise to the legal defense of justifiable homicide. The apprehension that the law requires must be a reasonable one. *State v. McQueen*, 431 S.W.2d 445 (Mo.1968); *State v. Grier*, 609 S.W.2d 201 (Mo.App.1980).

Moreover, something more than fear is necessary to justify taking the life of another. Some affirmative action, gesture or communication by the deceased must be shown in order to indicate the immediacy of danger. In the absence of any such action on the part of Zane indicating the immediacy of danger to defendant or her children, defendant's fear of being forcibly restrained from leaving—no matter how great that fear—was insufficient to justify the act of homicide. *State v. Parker*, 403 S.W.2d 623 (Mo.1966); *State v. Jackson*, 522 S.W.2d 317 (Mo.App.1975); *State v. Young*, 510 S.W.2d 732 (Mo.App.1974).

The record here lacks any substantial evidence to support a defense of justifiable homicide. The trial court was therefore correct in refusing to submit that defense. *State v. McQueen, supra*.

Affirmed.

All concur.

---

1. The record shows that defendant had been referred to Fulton State Hospital for mental examination. The psychiatric report indicated that defendant was suffering from a mental disease or defect making her not responsible for the crime, although the report also indicated that she was competent to stand trial. The trial judge held a special hearing immediately before trial, in addition to a hearing previously held, to verify defendant's competency and her desire with respect to the matter of her plea. He pointed out to her that she had the right to plead not guilty by reason of mental disease or defect and that the prosecuting attorney had stated that if such a plea were tendered, it would be accepted by the state. Nevertheless, defendant refused to change her plea and insisted upon proceeding to trial upon a plea of not guilty.